**Michael ROOTBERG, for himself and others similarly situated, Plaintiff,**

v.

**AMERICAN EXPRESS COMPANY, Defendant.**

**No. 72 Civ. 1626.**

United States District Court, S. D. New York.

Dec. 22, 1972.

---

Fuchsberg & Fuchsberg, New York City, for plaintiff; Murray L. Lewis, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant; Peter H. Kaminer, and Arnold S. Anderson, New York City, of counsel.

WARD, District Judge.

This is a motion by the defendant, American Express Company (Amexco), for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons hereinafter stated, the motion is granted.

The complaint alleges violation of the "Truth in Lending Act", 15 U.S.C. Section 1601 et seq.; breach of contract; and fraud. Jurisdiction is based on 15 U.S.C. Section 1640 and pendant jurisdiction. The underlying facts giving rise to this action are apparently not in dispute. The plaintiff, Michael Rootberg, was the holder of an Amexco Money Card, a charge card, which he used to purchase goods or services on four occasions while travelling in Yugoslavia in August, 1971. These sales were written up in local currency—Yugoslav dinars. Amexco converted these dinar amounts to U. S. dollars, paid the Yugoslavian establishments in U. S. dollars, and billed Mr. Rootberg in U. S. dollars.

Mr. Rootberg contends that the conversion rate used by Amexco in three of these four transactions was too high and contained a hidden finance charge. Amexco, while denying that it used an improper rate of conversion, contends that even if it did so, such an overcharge is not a finance charge. Furthermore, Amexco contends that its Money Card transactions are not within the scope of the Truth in Lending Act. This Court has concluded that Amexco Money Card transactions are not covered by the Truth in Lending Act and is, therefore, constrained to grant defendant's motion for summary judgment. As the plaintiff's counsel conceded at oral argument, the pendant causes of action must be dismissed for lack of subject matter jurisdiction.

The "Agreement" between Amexco and its Cardholders provides for payment of charges upon receipt of periodic statements except for certain purchases as to which a deferred payment plan is available. In the latter case, the Cardholder signs an additional agreement at the time of purchase. There is also a legend on the statement that it is "PAYABLE IN FULL UPON RECEIPT OF STATEMENT." There is no evidence that Amexco did in fact, in spite of these provisions, permit its Cardholders to defer payment.

There is a good deal of ambiguity as to whether "credit" as defined in 15 U.

S.C. Section 1602(e) applies to thirty-day accounts such as are offered by defendant.[1] The legislative hearings proceeding the enactment of this statute only add to the confusion.[2] However, it does seem clear that whatever the meaning of "credit" under the Act, the term "creditor" is defined under the Act so as to exclude plans such as the Amexco Money Card in which full payment is due upon presentation of the bill.[3] Amexco does not regularly "arrange for the extension of credit for which the payment of a finance charge is required"[4] and is, therefore, not a creditor covered by the Act and is not required to make the disclosures described in 15 U.S.C. Sections 1631–41.[5] This is the interpretation of the Act made by the Senate Committee which had earlier reported the Truth in Lending Act.[6]

Defendant's motion for summary judgment dismissing the complaint is granted.

So ordered.

1. 15 U.S.C. Section 1602(e) : "The term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

2. Hearings on S. 5 before the Subcommittee on Financial Institutions of the Senate Committee on Banking and Currency, 90th Cong., 1st Sess. (1967); and Hearings on H.R. 11601 Before the Subcommittee on Consumer Affairs of the Committee on Banking and Currency, 90th Cong., 1st Sess. (1967). *See, e. g.,* the comments of Congresswoman Leonor K. Sullivan in Hearings on H.R. 11601, at p. 148. The version of the bill reported out of Committee did not clearly adopt Congresswoman Sullivan's position. *See also,* the colloquies in Hearings on S. 5 at pp. 82, 305–06, 494. These discussions which were concerned with when a finance charge begins to accrue on a revolving charge account approached the metaphysical.

3. 15 U.S.C. Section 1602(f). "The term 'creditor' refers only to creditors who regularly extend, or arrange for the extension of, credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services, or otherwise. The provisions of this subchapter apply to any such creditor, irrespective of his or its status as a natural person or any type of organization."

4. Amexco derives its income on its Money Card operation by discounting the bills presented to it by the sellers of the goods and services as well as by charging each Money Card holder a stated annual fee.

5. Garland v. Mobil Oil Corp., 340 F.Supp. 1095 (N.D.Ill.1972) (disclosure of late payment charges).

6. Senate Comm. on Banking, Housing and Urban Affairs, Fair Credit Billing, S.Rep. No.92–750, 92nd Cong., 2d Sess. 15 (1972) : "Sec. 103. *Definition of creditor.*—This section amends the definition of a creditor under the TILA [Truth in Lending Act] for purposes of the Fair Credit Billing chapter provisions and certain other disclosure provisions of the TILA to include creditors who make no finance charge. The definition of creditor under the existing TILA only covers creditors who make a finance charge, and thus excludes the issuers of travel and entertainment cards such as American Express, Diners Club, Carte Blanche, etc., where a finance charge is not customarily charged. The amendment would include these companies under the Fair Credit Billing Act and related disclosure provisions of the TILA."