Kathy BRIGHT, Susan Barber, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

BALL MEMORIAL HOSPITAL ASSOCIATION, INC., Defendant.

No. IP 78–393–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Jan. 11, 1979.

Kenneth J. Falk, Muncie, Ind., for plaintiffs.

Jon H. Moll, Muncie, Ind., for defendant.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

### Background

Plaintiffs allege that defendant Ball Memorial Hospital (defendant or Ball Memorial) has violated certain provisions of the Truth in Lending Act (Act), 15 U.S.C. §§ 1601, et seq., and appurtenant regula-

tions, 12 CFR 226.1, et seq. Defendant allegedly failed to make proper disclosures regarding additional charges imposed in connection with delinquent accounts of various patients. Plaintiffs ask for damages and attorneys fees as provided for in 15 U.S.C. § 1640(a) and (b), and seek declaratory and injunctive relief.

Ball Memorial is a not-for-profit, charitable hospital. It is the only hospital in Delaware County, Indiana, and it serves four nearby counties in addition to Delaware County. Ball Memorial admits patients without regard to race, color, national origin or ability to pay.

Ball Memorial's billing procedure operates as follows. Minor differences between the methods by which inpatients and outpatients are billed will be noted.

(a) At the time of admission, inpatients are presented with a document entitled "Initial Credit Disclosure Statement." It states that payment is due upon discharge from the hospital, and recites the terms under which an additional charge is imposed if the account is not paid within 60 days of discharge.

(b) Four days after the care or service is rendered, the initial bill is sent (IB).

(c) At IB plus 14 days patients are sent a statement of account with the legend, "Your account is now due and payable. Please remit today."

(d) At IB plus 44 days patients are sent a second statement of account with the legend, "No doubt you have overlooked payment of your account. Please mail your remittance now."

(e) At IB plus 58 days patients are sent a third statement of account with the legend, "We are surprised that you continue to ignore your past due account. We must insist upon immediate payment." A coupon book is sent to inpatients with this statement. Patients who begin to use the coupon book receive a monthly billing which details the status of the account.

(f) At IB plus 72 days patients are sent a fourth statement with the legend, "It is apparent that you have ignored all of our previous notices. If there is any reason for delay of your payment, contact this office now."

(g) At IB plus 86 days patients are sent a fifth statement stamped "Final Notice" with the legend, "Final Notice—unless this account is paid in full by [date] it will be turned over to a collection agency." Outpatient accounts are delivered to a collection agency 14 days after the fifth statement is sent. Some discretion is exercised regarding whether inpatient accounts are to be turned over to a collection agency.

Ball Memorial considers an account to be delinquent if it is not paid within 30 days after the first statement is mailed. After that time a monthly charge of ¾% is imposed on the unpaid balance. The charge is waived by the hospital if the account is paid in full within 48 days of the date the services were rendered.

The cause is before the Court on defendant's motion to dismiss for lack of subject matter jurisdiction. Defendant asserts in this regard that it is not a creditor for purposes of the Act. Plaintiffs put forth the opposing view and move for partial summary judgment on the issue. Plaintiffs also move for determination as a class action. Defendant opposes class action certification.

### Discussion

The dispositive question in this case is whether a not-for-profit hospital such as Ball Memorial is a "creditor" within the meaning of the Act. For reasons enumerated below, this Court believes that it is not.

The language in the Act which defines "creditor" reads in pertinent part as follows:

"The term 'creditor' refers only to creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise. . . . The

provisions of this subchapter apply to any such creditor, irrespective of his or its status as a natural person or any type of organization." 15 U.S.C. § 1602(f).

This definition is refined in a regulation promulgated under authority of the Act:

"'Creditor' means a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit, which is payable by agreement in more than four installments, or for which payment of a finance charge is or may be required whether in connection with loans, sales of property or services, or otherwise. . . ." 12 CFR 226.2(s).

The plaintiffs assert that the defendant is described by the terms of these definitions. Plaintiffs also argue that transactions exempted from the Act are listed in 15 U.S.C. § 1603 and that defendant is not among the exemptions. In addition, plaintiffs maintain that nonprofit status does not exempt an entity from the coverage of the Act, and that Ball Memorial was intended to be covered by the Act.

Ball Memorial Hospital does not extend credit "in the ordinary course of business." Payment for services is due shortly after the services are rendered. The system is designed so that payment over time is the exception rather than the rule. Immediate payment is the standard from which defendant deviates only because of necessity. This is consistent with the hospital's purpose. Ball Memorial's "business" is providing health care at the lowest possible cost. Since it is a nonprofit operation, there is no incentive to extend credit other than to encourage payment of debts already due. There is nothing to be gained by profiting from a credit-sale arrangement because the total cost of operating the hospital (less funding from the government, etc.) must be spread among the patient population anyway. Ball Memorial has no profit-related motive for charging more to those who cannot pay for its services than to those who can.

Ball Memorial does not impose a "finance charge" within the meaning of the term as used in the Act. Rather, it is a fee levied for late payment. The difference between a finance charge and a late payment fee has been recognized in cases which have determined what entities are and are not creditors for purposes of the Act. In *Garland v. Mobil Oil Corporation,* 340 F.Supp. 1095 (N.D.Ill.1972), Mobil was held not to be a creditor under the terms of the Act because it imposed a "late payment charge" rather than a "finance charge." At 1098. The Court referred to 12 CFR 226.4(c), which excepts from the definition of finance charge:

"A late payment, delinquency, default, reinstatement, or other such charge if imposed for actual unanticipated late payment, delinquency, default, or other such occurrence."

A similar result obtained in *Rootberg v. American Express Company,* 352 F.Supp. 949 (S.D.N.Y.1972). The Court believed that a legend on the American Express statements which read "PAYMENT IN FULL UPON RECEIPT OF STATEMENT" indicated that American Express considered the debt due at that time, and that there was no "finance charge."

See, however, *Kroll v. Cities Service Oil Company,* 352 F.Supp. 357 (N.D.Ill.1972), wherein the language in 12 CFR 226.4(c) was held not to except late payment fees imposed as part of a credit card program. At 362.

It is apparent in this case that Ball Memorial patient accounts are due on discharge. It is true that in the information initially transmitted to patients are the inartfully selected terms "CREDIT DISCLOSURE STATEMENT" and "FINANCE CHARGE," but the substance of the billing system controls, not its labels. The bills are supposed to be paid within 30 days; the hospital is not in a position to terminate service if the bills are not paid.

In fact, Ball Memorial has little alternative other than to extend time for payment. If the delinquent accounts were discounted immediately upon default, for example, the

cost of patient care would be forced upward unnecessarily. Moreover, once it is accepted that time for payment must be extended in some cases, it follows that a charge for late payment must be made. If no fee were imposed patients would have no incentive to pay on time. Also, it makes sense for the patients in default to bear the cost of administering the accounts in default.

■ Last, institutions such as Ball Memorial were not intended to fall within the purview of the Act. To compel defendant to make the required disclosures would not aid in eliminating the mischief sought to be corrected by the Act's creation. The Act recites as its purposes enhancement of economic stabilization, strengthening of competition among financial institutions, and avoidance of uninformed use of credit. 15 U.S.C. § 1601. The Act is designed to force those in the consumer finance business to reveal clearly and accurately the cost of using their money. It would help no one to require compliance of Ball Memorial, which is in no way surreptitious in its financial dealings with patients. There is no "credit shopping" to be done in this case. The administrative cost of increased disclosure would have to be passed on to the patients. Imposition of the requirements of the Act would have the effect of raising the cost of care for those who pay on time in the first place and who do not deserve the increased cost, and would make it more expensive for those who cannot afford to pay on time and who pay late as a result. This would be absurd.

■ Because matters outside the pleadings have been considered and because there is no dispute as to the material facts, defendant's motion to dismiss will be treated as one for summary judgment. Rule 12(b), F.R.Civ.P. Defendant is not a creditor for purposes of the Act. This Court therefore does not have subject matter jurisdiction under 15 U.S.C. § 1640(e). Accordingly, plaintiffs' motion or partial summary judgment is denied and defendant's motion is granted. This result makes it unnecessary to consider plaintiffs' motion for certification as a class action.