In the Matter of Gwendolyn Elaine GIBBS, Debtor.

Gwendolyn Elaine GIBBS, Debtor, Plaintiff,

v.

HOUSING AUTHORITY OF NEW HAVEN, Defendant.

Bankruptcy No. 5–80–00330.
Adv. No. 2–80–0316.

United States Bankruptcy Court, D. Connecticut.

March 5, 1981.

Francis X. Dineen and Joanne S. Faulkner, New Haven, Conn., for plaintiff.

Frank P. Cochran and Sandra S. Sosnoff, New Haven, Conn., for defendant.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I. BACKGROUND

The Housing Authority of the City of New Haven (Authority) rents housing units on Brookside Avenue, New Haven, Connecticut, to persons under a state-aided housing development program for moderate income families. The debtor, Gwendolyn Elaine Gibbs (Gibbs) has been a tenant of the Authority with her three minor children since 1976. The parties entered into a form lease, effective May 18, 1979, setting the monthly rental at $143.00. A lease provision permits the tenant to terminate the lease at any time upon 15 days written notice. The lease, which has no term, can be terminated by the Authority only for good cause, such as failure to pay the rent or other tenant misconduct. Another provision requires the tenant to pay all costs, expenses and reasonable attorney fees incurred by the Authority arising out of or in connection with a lease termination. On June 28, 1979, a notice to quit possession was served upon Gibbs at the Authority's instance for nonpayment of rent. Thereafter, on August 6, 1979, Gibbs and the Authority entered into a "repayment agreement" under which, after noting that the Authority had terminated Gibbs' lease and that Gibbs desired to reinstate the lease, Gibbs agreed to pay rent arrearage of $429.00 plus $10.00 costs. $220.00 was due upon execution of the agreement and the balance of $219.00 was payable in six monthly installments of $37.00 each. All payments to be made by Gibbs were stated to be for use and occupancy, and not for rent, until the account was paid in full. The Authority agreed that it would reinstate the lease upon full payment. Gibbs failed to make all of the agreed-upon payments, and on December 28, 1979, the Authority caused to be served upon Gibbs a summary process complaint which sought immediate possession of the premises. Gibbs did not appear in response to this complaint, and the Connecticut superior court rendered judgment by default against her on January 18, 1980. On January 23, 1980, the Authority and Gibbs entered into another repayment agreement setting forth a rent arrearage of $241.00 and legal and court costs of $74.00, all to be repaid by Gibbs by an immediate payment of $158.00 with the balance payable in six monthly installments of $27.00 each beginning February 21, 1980. On May 12, 1980, Gibbs filed a petition for relief under Chapter 7 of the Bankruptcy Code in the bankruptcy court at Bridgeport. Acting upon the advice of her counsel that she did not have to pay the remaining three $27.00 installments called for by the repayment agreement, Gibbs declined to make these payments.

The Authority thereupon refused to accept her tender of monthly use and occupancy payments, and applied to the Connecticut superior court for an execution upon its judgment for possession. Because Gibbs' attorney had filed a "Notice of Filing Bankruptcy Petition" with the superior court clerk's office, the request for an execution which, under normal Connecticut procedure, would have been honored by the mailing of the requested execution to the Authority without hearing, was placed on the court calendar for a hearing. The superior court, on July 28, 1980, granted the motion for issuance of the execution for possession after hearing argument from counsel for Gibbs and the Authority. On the same day, Gibbs applied to the Bankruptcy Judge in Bridgeport and received an ex parte order prohibiting the use of the state court execution. The order was issued in connection with the filing of a complaint by Gibbs on the same date against the Authority in the bankruptcy court.

## II. THE COMPLAINT

The complaint filed by Gibbs, entitled "Complaint to Enforce Stay, for Damages and Other Relief" contains five counts. In the First Count, Gibbs claims that the actions of the Authority in pursuing an eviction are in violation of the automatic stay provided by 11 U.S.C. § 362. The Second Count alleges that these same actions by the Authority are in violation of the debtor protection provisions of 11 U.S.C. § 525. Violation by the Authority of the Connecticut statutes concerning unlawful collection procedures and unfair trade practices are alleged in the Third Count. The Fourth Count claims that the Authority's actions deny Gibbs her civil rights under color of state law in violation of 42 U.S.C. § 1983. In the Fifth Count, she claims that the repayment agreement utilized by the Authority violates state and federal Truth-in-Lending Laws. For relief, Gibbs seeks an

order holding the Authority and its attorneys in contempt, attorney's fees and costs, an order enjoining the Authority from seeking to obtain possession of the premises and actual, statutory and punitive damages. Gibbs continues to press all counts of the complaint except the Forth Count alleging a § 1983 claim.

## III. THE AUTOMATIC STAY PROVISIONS OF 11 U.S.C. § 362

Upon the filing of her petition for relief, both Gibbs and the estate created by the filing of the petition became entitled to the protection afforded by 11 U.S.C. § 362. This section, entitled "Automatic Stay" provides, in pertinent part, for a stay applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, or judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate; . . .

Subsection (d) *et seq.* of § 362 sets forth procedures for seeking from the bankruptcy court a relief from the stay. The Authority has never sought such relief from this court.

The Authority argues that after hearing it obtained an execution from the Connecticut superior court and that the decision of the superior court is now res judicata.[1] It says that in seeking an execution it was enforcing a regulatory power as a governmental unit and such action is ex-

---

1. Under the doctrine of res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Res judicata prevents litigation of all grounds for or defenses to recovery that

were previously available to the parties regardless of whether they were asserted or determined in the prior proceeding. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1978).

cepted from the automatic stay,[2] and that the state court had concurrent jurisdiction with the bankruptcy court to determine the issue of exceptions to the stay. It claims that Gibbs' attorney appeared in the state court and fully argued the matter of the issuance of an execution. Gibbs' remedy if she disagreed with the order of the state court, the Authority avers, was to appeal this order to a state appellate court, which she did not do. Gibbs denies that the doctrine of res judicata applies to these facts.

At the date of the commencement of the case, the estate thereby created included Gibbs' existing occupancy of premises owned by the Authority, notwithstanding the absence of any lease and notwithstanding the existence of an outstanding state court judgment of possession. This court, in *Pickus v. Vitagliano*, 8 B.R. 114, 7 C.L.T. No. 4, p. 11, decided that the broad definition of 11 U.S.C. § 541 includes such occupancy interest and that interference with that interest is prohibited by the stay provisions of § 362. Although the Authority argues that Gibbs' occupancy of the premises under the circumstances is not a property interest of the estate, I conclude that the *Pickus* holding was correct and reaffirm it.[3]

It has been clear ever since *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), that the jurisdiction of a bankruptcy court over property of the estate is exclusive, and any other court's action in exercising jurisdiction over such property is null and void and subject to collateral attack. The fact that Gibbs appeared in the state court to contest the granting of the execution does not have the effect of granting the state court jurisdiction to remove property from the estate. *Kalb, supra*, at 444, 60 S.Ct. at 348.[4] In issuing the execution, the state court was proceeding in rem against property of the estate. 2 *Collier on Bankruptcy* (15th ed.), § 362.05 at pp. 362–40, in discussing § 362(b)(4), states:

> ... the bankruptcy court is not a haven for wrongdoers and the policy of the Code is to permit regulatory police and criminal actions to proceed in spite of section 362(a)(1) but not to permit a seizure of property without a bankruptcy court order. Thus an action seeking to enforce compliance with State anti-pollution laws will be permitted to proceed, but a proceeding that would result in a taking of property would not.

The jurisdiction given the bankruptcy court to grant relief from the stay under 11 U.S.C. § 362(d) is also exclusive, and relief from this stay cannot be granted by any other court.[5] The court concludes that the

---

**2.** 11 U.S.C. § 362(b). "The filing of a petition ... does not operate as a stay—

> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
> (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power ...."

**3.** *Accord: In the Matter of GSVC Restaurant Corp.*, 3 B.R. 491, 6 BCD 134 (BC S.D.N.Y. 1980), *Affirmed* 10 B.R. 300, 6 BCD 295 (S.D. N.Y.1980); *In re R. R. S., Inc.*, 7 B.R. 870, CCH Bankr.L.Rep. ¶ 67,805 (BC M.D.Fla.1980). Section 541 reads, in pertinent part:

(a) The commencement of a case ... creates an estate. Such estate is comprised of all the following property, wherever located:

(1) ... all legal or equitable interest of the debtor in property as of the commencement of the case.

**4.** "Relative to the paramount nature of the Bankruptcy Act, *Kalb v. Feuerstein* and related cases have taken the position that when bankruptcy operates as an automatic statutory stay, further proceedings in an in rem suit, such as a foreclosure action, even though a decree had been entered in that action, are null and void, when leave to proceed further has not been obtained from the bankruptcy court." 1B *Moore's Federal Practice*, ¶ 0.419[3–6] at 3125–26.

**5.** The Authority would have its repayment agreement with Gibbs construed an executory contract which was violated subsequent to the petition, allowing the Authority to seek an execution. Whatever merit there may be to this argument, it could only form the basis of a request to the bankruptcy court for relief from stay, which the Authority did not make.

state court order is not a bar to this court's consideration of the issue of an exception to stay.

In its brief, the Authority claims that it should not be enjoined from effecting its execution because it is an agency established pursuant to the Housing Act of 1937, operating pursuant to regulations promulgated by the Department of Housing and Urban Development. The Authority avers that this makes it a "regulator". It next argues that "in acting to evict Gibbs, the Housing Authority was applying the regulations governing its operations and its own rules and regulations adopted pursuant to these federal requirements. It is a case of federal rules governing the landlord, and he, in turn, must regulate the tenant". (Brief for Authority, p. 17) This syllogistic reasoning is rejected. Commentary contained in House Report No. 95–595, 95th Congress, 1st Session, (1977), U.S.Code Cong. & Admin.News 1978, 5787 (House Report) makes it abundantly clear under what circumstances the exceptions claimed by the Authority to the § 362 stay are intended to apply.

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay. Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental

unit of a money judgment would give it preferential treatment to the detriment of all other creditors, *Id.*, at 343, 60 S.Ct. at 348.

■■■■ In view of the legislative history setting forth the purposes of § 362(b)(4) and (5), I conclude that the Authority is not enforcing a regulatory power when it seeks to evict a tenant pursuant to a judgment for possession based on nonpayment of rent, and that the Authority's application to the superior court for an execution does not come within any of the exceptions to the automatic stay. Even if the Authority were exercising a regulatory power, it would be subject to the stay provisions of § 362(a)(3).

In summary, the court holds that an existing occupancy of premises by a debtor upon the filing of a petition for relief is subject to the automatic stay provisions regardless of the existence of a state court judgment for possession of the premises; that any attempt by another court to deal with this occupancy without a relief from stay ordered by the bankruptcy court is a nullity and subject to collateral attack; that a public housing authority is not exercising a regulatory power when it seeks to enforce lease provisions; and that the statutory exceptions to the automatic stay cannot be employed to defeat the exclusive jurisdiction of the bankruptcy court over property of the estate.

## IV. THE PROTECTION AGAINST DISCRIMINATORY TREATMENT PROVISION OF 11 U.S.C. § 525

■■■ Gibbs received her discharge from the bankruptcy court on September 10, 1980. This discharge made the debt of $74.00 to the Authority no longer enforceable against her or her property. 11 U.S.C. §§ 524(a), 727(b). The Authority expressly admits that the only reason it is seeking to evict Gibbs is the nonpayment of the $74.00, and if Gibbs were to reaffirm this debt, the Authority would not evict her from the premises.[6] Gibbs claims that it is just this

---

**6.** A stipulation contained in a document entitled "Stipulations of Fact" submitted by the parties reads as follows:

"The defendant, Housing Authority, wishes to proceed with the eviction and the summary process execution against the plaintiff,

type of action which was sought to be barred by the enactment of § 525 of the Bankruptcy Code. That section provides in relevant part:

... a governmental unit may not deny, revoke, suspend or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, ... a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, ... solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, ... or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

As previously noted, the Authority concedes it is a governmental unit. *See* 11 U.S.C. § 101(21). The Authority points to the omission of the word "lease" in § 525, and claims it must have been Congress' intention to omit it, and thereby "not regulate the leasing practices of local public housing authorities". (Brief for Authority, p. 18). The statute does not purport to be exclusive in its listings of grants, and includes the phrase "or other similar grant". In addition, the legislative history teaches that " ... the section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination .... *Discrimination based solely on nonpayment would encourage reaffirmations, contrary to the expressed policy.*" House Report at 366–7, U.S.Code Cong. & Admin.News 1978, 6323. (Emphasis added) I believe that an obvious example of discrimination is presented by this proceeding, where the Authority will evict Gibbs solely because she has sought relief under bankruptcy law, become discharged of a debt of

Gwendolyn Gibbs, unless the plaintiff satisfies and performs the repayment agreement of January 23, 1980 by paying the $74.00 balance due under that agreement together with whatever use and occupancy has accrued from June 1, 1980, and the Housing

$74.00 to the Authority and refuses to reaffirm the said debt.

The court holds that the Authority's use of the state court execution to evict Gibbs is proscribed by § 525.

## V. THE UNLAWFUL COLLECTION PRACTICES AND UNFAIR TRADE PRACTICES CLAIM

In her Third Count, Gibbs claims that the aforesaid actions of the Authority constitute unlawful collection practices and unfair trade practices pursuant to Connecticut statutes. Gibbs says that these actions, in seeking to evict her, violate Conn.Gen. Stat. § 42–110b which provides that

No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

The court concludes that the actions complained of are not within the intent or purpose of the cited statute and that Gibbs has shown no basis for recovery thereunder. A like conclusion is drawn in considering the claim of violation of Conn.Gen.Stat. 36–243b which prohibits "any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt" on the part of any "creditor". Gibbs has not satisfied her burden of proof under either statute, and her prayer for relief under the Third Count is denied.

## VI. THE TRUTH–IN–LENDING CLAIMS

Gibbs claims in the Fifth Count of her complaint that the Authority is a "creditor" within the meaning of both state and federal Truth-In-Lending Statutes. Conn.Gen. Stat. § 36–393 *et seq.*, and 15 U.S.C. § 1601 *et seq.* Gibbs says the Authority's use of repayment agreements is in violation of the disclosure requirements of said statutes,

Authority agrees that Gwendolyn Gibbs will not be evicted and that she will be reinstated as a tenant and her lease renewed if she does pay those amounts, including the $74.00 balance."

making the Authority liable for actual and statutory damages, costs and attorney's fees pursuant to 15 U.S.C. § 1640.[7] In support of this claim, Gibbs alleges that because the Authority enters into numerous repayment agreements every year like the one entered into with her, and because such an agreement, on its face, constitutes an extension of credit payable in more than four installments, with a finance charge as defined by federal and state law, the Authority has not disclosed required information with respect to these matters.[8] The Authority concedes that it enters repayment agreements with approximately 30 of its more than 3,000 tenants each month, and that approximately one-half of the 160 agreements outstanding in January, 1980 called for payment in more than four installments. The Authority, citing *Mourning v. Family Publication Services, Inc.*, 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1972), denies that it is a creditor within the statutory definition of federal and state law and claims, *inter alia*, that the statutory disclosure requirements are not applicable to it.

▉ The repayment agreement alleged to violate truth-in-lending laws is not a trans-

action involving the extension of consumer credit.[9] The $74.00 alleged to be a finance charge subject to disclosure is conceded by Gibbs to comprise $10.00 for the cost of sending two letters by the Authority when payment was received late in two months, and legal charges ($35.00), sheriff's fees ($8.00), and court costs ($30.00) incurred by the Authority in its summary process action. (This actually totals $83.00, but Gibbs was only charged $74.00). Rather than a finance charge [10] the contested $74.00 is a fee levied for late payment under a lease provision, and as such, constitutes a fee not within the definition of 15 U.S.C. § 1605. *See Bright v. Ball Memorial Hospital Association, Inc.*, 463 F.Supp. 152, 154 (S.D.Ind. 1979). The Authority's business is to furnish low-cost rental housing to those in need of it, not to extend credit. Repayment agreements such as the one before me are for the worthy purpose of allowing a tenant to remain in occupancy after default under the tenant's lease, and there is no resemblance between such agreements and the transactions truth-in-lending laws were intended to cover.

Gibbs' prayer for relief under her Fifth Count is hereby denied.

---

**7.** Gibbs, by amendment to her schedules, listed and then exempted this claim in the estimated value of $100.00, thereby giving her standing to prosecute this claim.

**8.** Both 15 U.S.C. § 1602(f) and Conn.Gen.Stat. § 36–393(e) define "creditor" in pertinent part as follows: "The term 'creditor' refers only to creditors who regularly extend, or arrange for the extension of, credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise."

**9.** *15 U.S.C. § 1601. Congressional Findings and Declaration of Purpose.*
(a) The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able

to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

**10.** *15 U.S.C. § 1605. Determination of Finance Charge—Definition.*
(a) Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit, including any of the following types of charges which are applicable: (1) interest, time price differential, and any amount payable under a point, discount, or other system of additional charges. (2) service or carrying charge. (3) loan fee, finder's fees, or similar charge. (4) fee for an investigation or credit report. (5) premium or other charges for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.

## VII. CONCLUSION

 The court, based on the First and Second Counts of the complaint, permanently enjoins The Housing Authority of New Haven from seeking to enforce the execution secured from the Connecticut superior court in connection with the judgment for possession entered on January 18, 1980 in Case No. CV 6–8001–76447. Gibbs' request for a finding of contempt is denied as are the claims for damages under 42 U.S.C. § 1983, 15 U.S.C. § 1640 *et seq.*, Conn.Gen.Stat. 42–110b, Conn.Gen.Stat. § 36–393 *et seq.*, and Conn.Gen.Stat. § 36–243b.

This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.