In re Dorothy WATTS, Debtor.

In re Robert BRATTON, Debtor.

In re John & Irene
PIZZILEO, Debtors.

Dorothy WATTS, Robert Bratton, John & Irene Pizzileo, Plaintiffs,

v.

PENNSYLVANIA HOUSING FINANCE CO. and Robert F. Bobincheck, Individually and in his official capacity as Director of the Pennsylvania Housing Finance Agency, Defendants.

Bankruptcy Nos. 86–03358S, 86–04593S and 86–02640G.
Adv. No. 86–1366S.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 30, 1987.

David A. Searles, Mary Jeffrey, Henry J. Sommer, Philadelphia, Pa., for plaintiffs.

Jo Lynn M. Stoy, Lawana M. Johns, Harrisburg, Pa., for defendants.

Edward M. Mazze, Furlong, Pa., Trustee in case of Dorothy Watts.

Horace A. Stern, Philadelphia, Pa., Trustee in case of Robert E. Bratton.

Christopher G. Kuhn, Philadelphia, Pa., Trustee in case of John & Irene Pizzileo.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

## A. INTRODUCTION AND PROCEDURAL HISTORY

The instant adversarial proceeding raises several procedural and substantive issues for determination at this juncture. One procedural issue is a Motion requesting this Court to recuse itself, which recent local authority rather clearly indicates we should deny. The second procedural issue is a Motion for class determination, which we shall grant, and permit the named Plaintiffs to maintain the matter pursuant to Federal Rule of Civil Procedure (hereinafter referred to as "F.R.Civ.P.") 23(b)(2), although we shall confine the relief to unnamed class members to declaratory and injunctive as opposed to monetary relief.

The substantive issues are whether the termination of the Debtors' pre-petition benefits pursuant to the state Homeowners' Emergency Mortgage Assistance Act Program, 35 P.S. § 1680.401c, et seq. (hereinafter referred to as "HEMAP"), by the Defendants upon the Plaintiffs' filing of their respective bankruptcy petitions violated 11 U.S.C. § 525(a) and 11 U.S.C. § 362(a) of the Bankruptcy Code and 42 U.S.C. § 1983 of the federal Civil Rights Act. We hold that the Defendants' conduct violated all of these laws, and hence that declaratory and injunctive relief must be granted to the named parties and the members of their class, although we believe that the only appropriate additional relief at this juncture is an award of attorney's fees to the Plaintiffs' counsel, as we do not believe that any award of monetary damages to even the named Plaintiffs has been established.

This adversarial proceeding was commenced by the filing of a Complaint by two individuals and a couple who were, at the time of filing, debtors in three separate Chapter 7 bankruptcy cases in our Court, on November 24, 1986. Named as Defendants were the "PENNSYLVANIA HOUSING FINANCE CO.," a Pennsylvania state agency to which we will hereinafter refer as "PHFA"),[1] and ROBERT F. BOBIN-

---

1. The correct name of this Defendant is the Pennsylvania Housing Finance Agency and hence it is referred to herein as "PHFA."

CHECK, individually and Director of PHFA. One named Plaintiff, DOROTHY WATTS, had filed her petition on July 11, 1986, and was discharged on December 23, 1986; Plaintiff ROBERT BRATTON filed on October 2, 1986, and his case remains open, without any Discharge having been granted as yet; and Plaintiffs JOHN and IRENE PIZZILEO filed on May 19, 1986,[2] and they were discharged on March 13, 1987.

The Defendants filed an Answer to the Complaint on January 6, 1987, and the Plaintiffs embarked upon discovery, to which the Defendants responded on February 9, 1987.

On February 15, 1987, the Defendants filed a Motion to Disqualify Judge (hereinafter referred to as "the Recusal Motion"), including an unsworn "Affidavit" by the Defendants' counsel which merely incorporates the contents of the Motion. This Motion was answered by the Plaintiffs on February 20, 1987, and scheduled for a hearing on March 18, 1987.

On February 20, 1987, the Plaintiffs also filed a Motion for Determination of Class Action (hereinafter referred to as "the Class Motion"). This Motion was also scheduled for a hearing on March 18, 1987.

The Summons originally set the date for trial on the merits in this matter on January 20, 1987. By agreement of the parties, the trial date was continued until February 24, 1987.

On February 24, 1987, only counsel for the Plaintiffs appeared and proposed a schedule for disposition which he indicated was acceptable to all parties. This schedule, incorporated into an Order issued by us on February 24, 1987, was as follows:

1. The Defendants were provided until March 18, 1987, to file a Brief in support of the Recusal Motion.

2. The Plaintiffs were provided until April 10, 1987, to respond to the Defendants' Brief on the Recusal Motion, file a Motion for Summary Judgment (herein-

after referred to as "the Summary Judgment Motion"), and file a Brief addressing the Summary Judgment Motion and the Class Motion.

3. The Defendants were provided until May 8, 1987, to file any responses they deemed appropriate to the Plaintiffs' Briefs.

This briefing schedule was, for the most part, adhered to by the parties, although we note that the Defendants filed their responses to the Plaintiffs' Summary Judgment Motion in the form of a Cross-Motion for Summary Judgment on May 11, 1987, and the Plaintiffs filed a Response to this Cross-Motion on May 22, 1987.

Because all of the issues are presented to us on Motions, we need not, and indeed cannot, render Findings of Fact. Also, the facts are simple and can be very briefly described before we address the contents of the record relevant to each of the following in turn: (1) the Recusal Motion; (2) the Class Motion; and (3) the Summary Judgment Motions.

## B. RELEVANT FACTS

Each of the named Plaintiffs' circumstances present similar factual patterns. After falling behind in their home mortgage payments, each homeowner applied to PHFA for HEMAP benefits. In each case, HEMAP benefits were granted, and PHFA agreed to bring the arrears up to date, and, for named Plaintiffs Watts and Bratton and most of the class members, awarded ongoing monthly assistance payments as well. At some point after having been approved for HEMAP benefits, each homeowner filed a bankruptcy petition. After notification of the petition, PHFA, without seeking relief from the automatic stay, admittedly sent each of the named Plaintiffs and unnamed putative class members a form letter stating that "the [PHFA] is discontinuing your monthly assistance under [HEMAP] due to your filing for bankruptcy." The letter, under the signature of Defendant BOBINCHECK, goes on to

---

**2.** We note that the caption erroneously recites Bankr. No. 86–02646G, when in fact the correct

case number is 86–0264*0*G.

state two reasons for this action: (1) A homeowner is ineligible for HEMAP benefits when the mortgagee "is prevented by law from foreclosing upon the mortgage," per 35 P.S. § 1680.404c(a)(7), and the imposition of the automatic stay prohibits the foreclosure; and (2) the bankruptcy filing is a "change in your financial circumstances," necessitating a reevaluation of eligibility. In addition to the named Plaintiffs, PHFA admitted, in discovery, that thirteen other debtors had received this letter and, like the named Plaintiffs, had their benefits terminated until their bankruptcies were completed.

The Affidavit of Defendant BOBIN-CHECK, attached to the Defendants' Summary Judgment Motion, does not deny any of these facts, but contends that the Defendants' actions were legally justified. Thus, the sole issue is whether the Defendants' legal position is correct, rendering the case appropriate for full disposition on the Cross-Motions for Summary Judgment.

## C. THE RECUSAL MOTION MUST BE DENIED.

The Recusal Motion, raising issues which have been addressed in recent decisions of this Court, the Local District Court, and the local Court of Appeals, can be rather easily disposed of on the basis of those recent decisions. This Motion is based upon, alternatively, 28 U.S.C. §§ 144 and 455(a) and (b)(1), which provide as follows:

§ 144. Bias or prejudice of judge

Whenever a party to any proceeding in a district court makes and filed a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

§ 455. Disqualification of justice, judge or magistrate

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings; . . .

We discussed each of these statutory provisions at length in what we believe was a factual setting presenting a closer question of whether recusal was appropriate in *In re Johnson-Allen*, 68 B.R. 812 (Bankr.E.D.Pa.1987), *modified sub nom. Crown Leasing Corp. v. Johnson-Allen*, 70 B.R. 350 (E.D.Pa.1987). As we explained in that decision, 68 B.R. at 815, the significant document in a 28 U.S.C. § 144 motion is the affidavit, which must meet the following standards:

In an affidavit of bias, the affiant has the burden of making a three-fold showing:

(1) The facts must be material and stated with particularity;

(2) The facts must be such that, if true, they would convince a reasonable man that a bias exists.

(3) The facts must show the bias is personal, as opposed to judicial in nature. *United States v. Thompson*, 483 F.2d 527, 518 (3d Cir.1973).

■ Here, there is some question as to whether the Defendants have submitted any "Affidavit" at all, because all that is included to purportedly meet this fundamental prerequisite of a § 144 Motion is an unsworn verification by the Defendants' counsel, incorporating the contents of the Motion and "verifying" that it is true. We seriously doubt that this meets the requirements of an "affidavit" from a "party." It is merely a certification by counsel that the contents are well-grounded in fact, which is

no more and no less than is effected when counsel signs any pleading, per Bankruptcy Rule 9011 and F.R.Civ.P. 11.

■ However, assuming *arguendo* that this rather significant defect is overlooked and we consider the contents of the Motion as if they were the contents of a proper § 144 Affidavit, we do not believe that its contents are such as would "convince" any "reasonable man" to conclude that this Court is biased against the Defendants. All that is alleged are, in substance, the following averments:

1. The undersigned worked for Lehigh Valley Legal Services, Inc. (hereinafter referred to as "LVLS"), a federally-funded legal services program, prior to judicial appointment on August 27, 1986; and the Plaintiffs are represented by Community Legal Services, Inc. (hereinafter referred to as "CLS"), an entirely separate legal services program which allegedly is, along with LVLS, part of a state-wide legal services "network."[3]

2. This Court represented other "aggrieved applicants" who applied for assistance under HEMAP, including one case appealed to Commonwealth Court.

The Opinion of Chief Judge Fullam of the District Court in *Johnson-Allen* answers the contentions made by the Defendants in this Motion. Holding that this Court was not obliged to recuse there, Chief Judge Fullam expressed concern only with the facts that this Court had made strong statements on a radio talk show and in newspaper reports against a member of the "rent-to-own" industry, another member of which was the Defendant in that case. 70 B.R. at 351. With respect to the argument that the undersigned's vigorous advocacy contrary to the Defendants' position just prior to appointment to the bench required recusal, the Chief Judge stated as follows:

the fact that a judge advanced certain legal arguments in the course of representing clients before becoming a judge does not reflect bias, or cast doubt upon his/her impartiality, nor does it present the appearance of impropriety. *Id.*

These comments, affirming those in our own *Johnson-Allen* Opinion, 68 B.R. at 815–17, totally answer the substance of all of the Defendants' allegations here under 28 U.S.C. § 144.

The Defendants' contentions that 28 U.S.C. §§ 455(a) or 455(b)(1) could serve as the basis for recusal have recently been the subject of two discussed decisions by the local Court of Appeals. These grounds were also rejected, in a closer case, by both the District Court and us in *Johnson-Allen*, 68 B.R. at 817–18 and 70 B.R. at 351. In *Edelstein v. Wilentz*, 812 F.2d 128, 131 (3d Cir.1987), the Court of Appeals reviewed the denial of a § 455(a) Motion to recuse a judge who had been employed by the state office which had promulgated a New Jersey Supreme Court Rule, under attack in that case. The Court held as follows:

Since a judge's prior position as a United States Attorney does not require his or her recusal unless the case at issue arose before the judge left that position, *see Barry v. United States*, 528 F.2d 1094 (7th Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); *In re Grand Jury Investigation*, 486 F.2d 1013, 1015–16 & n. 3 (3d Cir.1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), Judge Cowen's prior position with the New Jersey courts could not reasonably be deemed to be a basis to question Judge Cowen's ability to rule impartially in this case. Our standard of review is abuse of discretion. *See Johnson v. Trueblood*, 629 F.2d 287, 290 (3d Cir.1980); *cert. denied*, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). We cannot say that Judge Cow-

---

**3.** The Defendants withdrew an averment in this Motion that the undersigned "may have" discussed this case with the Plaintiffs' counsel prior to the institution of this action while at LVLS. We would note that we had no knowledge of this case or any issue it presents at any time prior to coming upon this case among our regular randomly-assigned caseload. We also note that none of the unnamed class members reside in Lehigh or Northampton Counties, the sole service areas of LVLS, and hence it is impossible that any of them could have been clients of the undersigned.

en abused his discretion in declining to recuse himself. *Id.*

In *Cipollone v. Liggett Group, Inc.,* 802 F.2d 658, 659–60 (3d Cir.1986), the Court of Appeals considered a § 455(b)(1) Motion to recuse a judge who, while a practicing lawyer, had litigated the same issues on which he rendered a decision in the *Cipollone* case. The Court stated as follows, in rejecting this contention:

> Cipollone does not assert that Judge Hunter has knowledge of evidentiary facts. If Judges could be disqualified because their background in the practice of law gave them knowledge of the legal issues which might be presented in cases coming before them, then only the least informed and worst-prepared lawyers could be appointed to the bench. *Id.*

We see little, if any, distinction between the contentions of the Defendants here and those raised in *Edelstein* and *Cipollone.* We therefore shall deny the Recusal Motion and proceed to decide the next procedural issue in this case, the Class Motion.

D. THE CLASS MOTION MUST BE GRANTED INSOFAR AS IT SEEKS DECLARATORY AND INJUNCTIVE RELIEF UNDER F.R.CIV.P. 23(b)(2) FOR THE CLASS

1. CLASS ACTIONS CAN BE MAINTAINED IN BANKRUPTCY COURT, AND WE SHOULD LIBERALLY ALLOW A CLASS ACTION SEEKING ONLY DECLARATORY AND INJUNCTIVE RELIEF

In their Complaint, the Plaintiffs indicate that they are maintaining this action on behalf of a class defined as "all individuals who have been or who will in the future apply for or be awarded benefits under HEMAP and thereafter become debtors under the Bankruptcy Code." While this definition is reasonably clear, we do note that the Complaint is somewhat ambiguous as to what sort of relief is requested for unnamed class numbers. The only specific portion of F.R.Civ.P. 23 invoked is 23(b)(2),[4] which suggests that declaratory and injunc-

tive relief is all that is sought for the class. Although the Prayer for Relief of the Complaint seeks "compensatory and punitive damages" for "plaintiffs," which could conceivably include unnamed class members, we believe that the Plaintiffs only seek declaratory and injunctive relief, as opposed to monetary relief, for unnamed class members.

In any event, it is doubtful, because of questions that this might raise as to whether certain other requirements of Rule 23 can be met, whether we would permit the Plaintiffs to obtain anything more than declaratory and injunctive relief for unnamed class members. Thus, we determine that they can maintain a class action, pursuant to F.R.Civ.P. 23(b)(2), which provides for principally only such relief.

At the outset, we note that it is feasible to maintain a class action in an adversarial proceeding in bankruptcy court. Bankruptcy Rule 7023 specifically renders F.R. Civ.P. 23 applicable to adversarial proceedings. *See, e.g., Lee v. Board of Higher Education,* 1 B.R. 781, 783 (S.D.N.Y.1979); *In re Broadhollow Funding Corp.,* 66 B.R. 1005, 1007 (Bankr.E.D.N.Y.1986); and *In re REA Express, Inc.,* 10 B.R. 812, 812 (Bankr.S.D.N.Y.1981).

We also note, at the outset, the principle that F.R.Civ.P. 23 should be liberally construed in favor of the moving party, as stated in *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 563 (2d Cir.1968), *rev'd on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974):

> If there is error to be made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.

*See also Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.1968); *Contract Buyers League v. F. & F. Investment,* 48 F.R.D. 7, 14 (N.D.Ill.1969). *See also* 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1786 at 138 (1972).

---

4. *See* page 397 *infra* for the text of this Rule.

F.R.Civ.P. 23 establishes four prerequisites to the maintenance of a class action, all of which must be met in order to maintain a class action. They are:

> (1) the class must be so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately represent the interests of the class.

In addition to these criteria, one of the alternative provisions of subdivision 23(b) must be met. 7 C. WRIGHT & A. MILLER, *supra*, § 1753. As indicated above, the Plaintiffs seek to maintain this action under subdivision (b)(2). Because this is an action which challenges a certain specifically-defined practice of the Defendants, and declaratory and injunctive relief is sought for the named Plaintiffs and for all class members affected by this practice, this case appears to be clearly within the normal scope of a (b)(2) class action. *See Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 248–53 (3d Cir.1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1976). That Section of the Rule provides as follows:

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> · · · · ·

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive drelief or corresponding declaratory relief with respect to the class as a whole.[5]

---

**5.** We also observe that, alternatively, it would seem that this matter could proceed as a class action under F.R.Civ.P. 23(b)(1)(A), which provides as follows, as it involves a challenge to state agency procedures which are doubtless administered in a uniform manner by the Defendants:

> (b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

### 2. RULE 23(a)(1): NUMEROSITY

▮ In determining whether the numerosity requirements of Rule 23(a)(1) are met in a particular case, the Court must look to all the circumstances of the case to determine whether the number of persons in the class is so large as to make joinder of all the parties impracticable. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). The key to fulfillment of 23(a)(1) is impracticability of joinder. However, the rule requires only that joinder of all class members be impractical, not impossible. 3B J. MOORE FEDERAL PRACTICE, ¶ 23.05[3], at 23–168 (2d ed. 1987).

Applying the above standard, courts in this district have certified class actions composed of fourteen members, *Manning v. Princeton Consumer Discount Co., Inc.*, 390 F.Supp. 320 (E.D.Pa.1975), *aff'd*, 533 F.2d 102 (3d Cir.1976), *cert. denied*, 429 U.S. 865, 91 S.Ct. 173, 50 L.Ed.2d 144 (1976); twenty-five members, *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968); and one hundred (100) members, *Frankford Hospital v. Blue Cross of Greater Philadelphia*, 67 F.R.D. 643 (E.D.Pa.1976).

Discovery taken by the Plaintiffs here reveals that there are only sixteen members of the putative class at present. The Defendants claim that this figure is too small to constitute a class, citing *Moore v. Western Pennsylvania Water Co.*, 73 F.R.D. 450 (W.D.Pa.1977); and *Murray v. Norberg*, 423 F.Supp. 795 (D.R.I.1976), in support of their position.

▮ We note, however, that the Plaintiffs seek to maintain this action on behalf of future as well as present victims of the

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, ...

Defendants' allegedly discriminatory policies. Because of the continuously evolving nature of the class, it is impossible to establish the exact number of the class members at any time. It is necessary that the Plaintiff demonstrate only that a class of persons exists, and estimate the total number based on the available evidence of the numerical composition of the class to fulfill the 23(a)(1) requirement. *Santiago v. City of Philadelphia*, 72 F.R.D. 619 (E.D.Pa. 1976) (LORD, CH. J.) (class composed of past, present and future children confined at the Philadelphia Youth Study Center); *Entin v. Barg*, 60 F.R.D. 108 (E.D.Pa. 1973). Moreover, in cases such as this, where the relief sought for the class is confined to injunctive and declaratory relief, "even speculative, conclusory representations as to the size of the class suffice." *Doe v. Flowers*, 364 F.Supp. 953 (N.D.W.Va.1973), *aff'd*, 416 U.S. 922, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974).

■ We believe that the reasoning of the case cited by the Plaintiffs, *Allen v. Isaac*, 99 F.R.D. 45, 53 (N.D.Ill.1983) (class of fourteen members sufficiently "numerous" when geography, ability of individual members to maintain independent actions, and economy of preventing litigation of identical issues), is more convincing than the reasoning of *Moore* (class of fourteen members in racial discrimination suit insufficient despite attempts to join future victims of challenged conduct). Ten of the sixteen parties identified here as unnamed class members appear to reside outside of the Eastern District of Pennsylvania. We do not know the status of their cases, and it would seem wasteful to delay the disposition of this case by requiring the Plaintiffs to intervene each one of them as named parties. The *Moore* case is distinguishable from the instant case because the practice challenged—discrimination—is inherently more particularized and difficult to administer in class treatment than the challenge of the one, narrow easily-identifiable practice of the Defendants in issue here. In this respect, this case is closely comparable to *Manning*, decided by this Court and affirmed by the Court of Appeals, which held that fourteen class members will suffice to meet the 23(a)(1) requirement. *Murray* is clearly distinguishable, because the class there actually contained fewer than ten members. 423 F.Supp. at 798 n. 5.

We therefore hold that the Plaintiffs in this case have established the existence of a class presently numbered at sixteen, that it would be wasteful of the resources of this Court and the parties to join all the named parties, and that the size of the class would continue to grow if no relief were provided to the Plaintiffs. We believe that these showings are sufficient to allow us to conclude that the joinder of all the members of this class would be impracticable and would result in a burden to the administration of justice which F.R.Civ.P. 23 was designed to avoid.

### 3. RULE 23(a)(2): COMMONALITY

The requirement of Rule 23(a)(2) relating to common questions of law *or* of fact is rather obviously satisfied. It is clear that the Plaintiffs are attacking a certain admitted and early-identifiable practice of the Defendants which the Defendants quite naturally admit is applied as equally as possible to all persons to whom they deem the practice applicable.

■ Rule 23(a)(2) does not require absolute identity of facts among class members. By its terms, this provision is satisfied as long as there are significant common questions.

Speaking generally, the courts have stated that a showing that "a common core of questions will persist," *Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484, 488 (N.D.Ill.1969), is sufficient to satisfy the requirement of 23(a)(2). It must be emphasized that, since this action is not deemed to be maintained to obtain money damages for all class members pursuant to 23(b)(3), but rather to obtain only declaratory and injunctive relief for the class, it is not necessary that common questions predominate, but only that they exist. *See Santiago, supra*, 72 F.R.D. at 624; and *Sommers v. Abraham Lincoln Fed. Savings & Loan Ass'n*, 66 F.R.D. 581, 586 (E.D.Pa.1975) (per NEWCOMER, J.).

Numerous decisions have emphasized that variety in the factual patterns of class members does not bar, per 23(a)(2), a class determination. In *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975), the court says:

It is to be recognized that there may be varying fact situations among indvidual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory.

In *Senter v. General Motors Corp.*, 532 F.2d 511, 524 (6th Cir.1976), the court states that "[f]actual identity between the Plaintiff's claims and those of the class he seeks to represent is not necessary." Similarly, local courts have emphasized that fluctuation of underlying facts does not defeat commonality, *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 691 (E.D.Pa.1977) (per HIGGINBOTHAM, J.), and that an absence of identical, interchangeable facts among class members does not render a class incompatible with the 23(a)(2) requirement either. *Dickerson v. United States Steel Corp.*, 439 F.Supp. 55, 61 (E.D.Pa.1977) (per NEWCOMER, J.). As the court states in *Pendleton v. Schlesinger*, 73 F.R.D. 506, 509 (D.D.C.1977):

In passing on commonality, it is not appropriate to examine the likeness or relation of the several claims of all members of the class and their representatives. The only proper inquiry is, as the language suggests, whether there is some aspect or feature of the claims which is common to all.

■ The Defendants maintain that the decision of the Court of Appeals in *Alexander v. Gino's, Inc.*, 621 F.2d 71 (3d Cir. 1980), supports a denial of the instant class motion on the basis of commonality. We do not agree, because the decision in *Alexander*, which appears to have been a 23(b)(3) class action, was expressly based upon the following unique factors there, which are totally absent here: (1) The named plaintiff herself was unsuccessful in her claim of sexual discrimination. *Id.* at 73–74; and (2) The only other identifiable class members gave totally disparate rea-

sons for the employer's actions against them. *Id.* at 74. Here, all of the class members clearly raise common questions of law, as all were denied benefits on the basis of the one narrowly-identified practice which is in question. It must be recalled that a common question of law *or* fact will suffice to meet the requirement of F.R.Civ.P. 23(a)(2).

In the instant case, as in any class action, it is clear that the fact patterns of the class members will vary to some extent. However, there is clearly a "common core of questions" which arises from the fact that each of the sixteen identifiable class members could raise the same, identical legal claims as are set forth in the instant Complaint in separate lawsuits. This characteristic of the action establishes commonality sufficient to satisfy the prerequisites of Rule 23(a)(2).

### 4. RULE 23(a)(3): TYPICALITY

The typicality requirement under 23(a)(3) is met if "the claims of the class representatives and members are based on the same legal theory." *Santiago, supra,* 72 F.R.D. at 624. The determining factor is whether, "the class representatives and members have suffered the same types of injuries as a result of policies and practices" of the Defendant. *Id.* The claims of the Plaintiffs are, by this definition, clearly typical of the claims of the class members, as evidenced by the common questions of law and fact among the Plaintiffs and the class they seek to represent as referred to above. The same legal theories apply to the class representatives and to each of the class members. The single question presented is whether the Defendants' practice of terminating HEMAP benefits upon the filing of bankruptcy violates 11 U.S.C. §§ 525(a), 362(a)(3), and 42 U.S.C. § 1983.

Again, the Defendants' only contrary citation is a clearly-distinguishable case, *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 95 F.R.D. 168 (D.Del.1982). In that case, which challenged certain practices in the Defendant's composition of and pricing of soft-drink syrup, the court would have had to review

a series of contracts stretching over sixty years and the laws of thirty-two different states. *Id.* at 170–74, 175–178. Hence, it is not surprising that the court there found both the elements of commonality and typicality not present. No such problems exist here.

### 5. RULE 23(a)(4): ADEQUACY OF REPRESENTATION

It cannot be seriously questioned that the named Plaintiffs, as representative parties, have and will fairly and adequately represent and protect the interests of the class pursuant to Rule 23(a)(4). Adequacy of representation depends on two factors: (a) the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutual Ins. Co., supra,* 508 F.2d at 247.

In the instant case, the interests of the named Plaintiffs are in no perceptible sense adverse or antagonistic to the interest of any unnamed class members. Further, the Plaintiffs' counsel, CLS, is an agency whose attorneys are uniquely experienced and qualified in handling comparable litigation. It is clear that these attorneys will prosecute vigorously this action on behalf of the class, as they have done thus far.

All of the requirements of Rule 23(a) are hence satisfied here. It is further rather easily demonstrable that the additional requirement of Rule 23(b)(2) is satisfied here.

### 6. RULE 23(b)(2): PARTIES OPPOSING CLASS HAVE ACTED ON GROUNDS GENERALLY APPLICABLE TO THE CLASS

Rule 23(b)(2) permits a suit to be maintained as a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

By its very nature, a (b)(2) class must be cohesive as to those claims tried in the class action. *Wetzel, supra,* 508 F.2d at

248. Because of this cohesive nature of the (b)(2) class, all members of the class will be bound without their being given the opportunity to opt out of the class. Rule 23(c)(1). Any unfairness resulting from the res judicata effect of a judgment in a (b)(2) case is outweighed by the purpose behind this kind of class action: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation. *Wetzel, supra,* 508 F.2d at 248–49.

There is no requirement that every member of the class must suffer exactly the same denial of rights as the named Plaintiffs, so long as the denial of rights, by the acts complained of, is sufficiently threatened to each class member to make declaratory and injunctive relief necessary and appropriate. *Conover v. Montemuro,* 477 F.2d 1073, 1082 (3d Cir.1973). Commenting on the type of conduct forming the basis of Rule 23(b)(2) action, the Advisory Committee stated:

Action or inaction is directed to the class within the meaning of the subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class. Advisory Committee Note to Rule 23(b), quoted in 3B J. MOORE, *SUPRA,* ¶ 23.01 [10–12], at 23–26.

The instant case challenges, on several grounds, the admitted practices of the Defendants. The legal questions are common to all members of the class and, therefore, the conduct of the Defendants is actionable "on grounds generally applicable to the class," and the relief sought is "relief with respect to the class as a whole." This action thus comes squarely within 23(b)(2), since the primary relief requested is the termination of allegedly illegal policies and practices. As it was to the court in *Lee, supra,* which was also a class action brought in bankruptcy court to challenge allegedly discriminatory policies, it is clear to us that, here, "class certification implements the salutory objectives of class litigation." 1 B.R. at 785. Hence, we find

that this case conforms to the requirements of subdivision (b)(2), and we will permit this action to be maintained as a class action, for declaratory and injunctive relief, on behalf of the unnamed class members under 23(b)(2), and we will so certify the putative class.

### E. THE PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE MERITS

#### 1. INTRODUCTION.

It will be recalled, from the foregoing discussion on the class issue, that each of the named plaintiffs' circumstances present a similar factual pattern. The Defendants justified their actions not by disputing the Plaintiffs' factual averments as to what they allegedly had done in terminating benefits upon the Plaintiffs' bankruptcy filing, but by arguing that the terminations of HEMAP benefits effected, under the circumstances here, were legal. Thus, as we indicated *supra*, the Defendants agree with the Plaintiffs that this matter could be appropriately resolved on the Summary Judgment Motions.

The Defendants concede that the bankruptcy filing and the automatic stay which arises therefrom as a matter of law, *see, e.g., In re Clark,* 69 B.R. 885, 889 (Bankr. E.D.Pa.1987), were the only reasons for the termination of the HEMAP benefits. However, the Defendants, at the outset, contend that this action is barred against them entirely by the terms of the Eleventh Amendment to the United States Constitution. They also contend that, in effecting the practice in issue, they were merely enforcing a requirement, applied to all its applicants, which prohibits HEMAP assistance to a homeowner if the mortgagee is prevented by law from foreclosing upon the mortgage, 35 P.S. § 1680.404c(a)(7). The imposition of the stay, which prevents mortgagees from proceeding to foreclosure, is thus said to disqualify the Plaintiffs. The Plaintiffs contend that this action on the part of the Defendants violates 11 U.S.C. § 362(a)(3), which itself provides for the automatic stay and, specifically, bans any action to obtain property of the estate; the federal Civil Rights Act, 42 U.S.C. § 1983; and 11 U.S.C. § 525(a), which prevents governmental discrimination against debtors. Although we have discussed § 525(a) in two previous decisions, *In re Sudler,* 71 B.R. 780, 786–87 (Bankr.E.D.Pa.1987); and *In re Metro Transportation Co.,* 64 B.R. 968, 975–76 (Bankr.E.D.Pa.1986), this is the first case before us in which § 525(a) is clearly the centerpiece. Thus, after rejecting rather easily the Eleventh Amendment defense, we are constrained to carefully review § 525(a) and the cases interpreting it for the first time, and, thereafter, we shall consider the application of § 362(a)(3) and 42 U.S.C. § 1983 to the practices of the Defendants in issue.

#### 2. THE ELEVENTH AMENDMENT DOES NOT BAR THE SUIT IN ISSUE.

 There are several short answers to the Defendants' defense based on the Eleventh Amendment, which provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States, by Citizens of another state, or by Citizens or Subjects of any Foreign State.

The first is that the Court of Appeals has repeatedly rejected this argument, on the ground that 11 U.S.C. § 106(c), which provides that, "notwithstanding any assertion of sovereign immunity," a determination by a bankruptcy court on any claim, issue, or issue arising under the Bankruptcy "binds governmental units," constitutes a specific Congressional abrogation of this defense to states in actions brought against them under the Code. *See In re Vazquez,* 788 F.2d 130, 132–33 (3d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 414, 93 L.Ed.2d 365 (1986). *Accord, In re McVey Trucking, Inc.,* 812 F.2d 311, 326–27 (7th Cir.1987). In recognizing the Third Circuit precedents and thus rejecting this defense in *In re*

*Johnson-Allen*, 69 B.R. 461, 465–66 (Bankr. E.D.Pa.1987), we stated as follows: [6]

> As the Court of Appeals recently held in *In re Vasquez* [sic], 788 F.2d 130, 132 (3d Cir.1986, the Bankruptcy Code, at 11 U.S.C. § 106(c), which has been the subject of "broad interpretation," contains a waiver of sovereign immunity. *See also Gardner v. Pennsylvania Dep't of Public Welfare*, 685 F.2d 106 (3d Cir.), *cert denied*, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982).

Secondly, we believe that such a defense is particularly innappropriate in response to claims under § 525(a). That Code provision [7] applies *only* to discrimination by a "governmental unit" in such a case. Any other interpretation would lead to the absurd conclusion that Congress intended to provide no enforcement mechanism against any state, or its agencies, no matter how blatantly such entities discriminated against debtors.

Finally, since we are according the Plaintiffs only declaratory and injunctive relief, the Eleventh Amendment would not, in any event, apply to bar such relief. *See In re Elsinore Shore Associates*, 66 B.R. 708, 714 (Bankr.D.N.J.1986); *In re Goldrich*, 45 B.R. 514, 518–19 (Bankr.E.D.N.Y.1984), *rev'd on other grounds*, 771 F.2d 28 (2d Cir.1985); *In re Arminio*, 38 B.R. 472, 479–81 (Bankr.D.Conn.1984); and *In re Son-Shine Grading, Inc.*, 27 B.R. 693, 695 (Bankr.E.D.N.C.1983).[8]

### 3. THE DEFENDANTS' PRACTICES IN ISSUE VIOLATE 11 U.S.C. § 525(a).

We begin our analysis of § 525(a) reciting the Code section itself, which provides as follows:

> Except as provided in the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. §§ 499a–499s), the Packers and Stockyards Act, 1921 (7 U.S.C. §§ 181–229), and section 1 of the Act entitled "an Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943 (57 Stat. 422; 7 U.S.C. § 204), a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

The legislative history reveals that Congress intended that § 525(a) permit courts to continue to develop a doctrine first announced in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), wherein the court held that an Arizona statute which stated that a bankruptcy did not discharge a debtor from the terms of the financial responsibility law of that state violated the Supremacy Clause of the federal Constitution. The court's holding was based on the practical observation that allowing the Arizona statute to remain fully effective would frustrate the policy that a bankruptcy is to provide the debtor with a "new opportunity in life," 402 U.S. at 648, i.e., an unhampered "fresh start." *See Lo-*

---

**6.** This is an entirely different adversarial proceeding from that cited at pages 394–95 *supra*.

**7.** This entire section is quoted at pages 402–03 *infra*.

**8.** We do note that the Third Circuit decisions in *Vazquez* and *Gardner, supra*, and *McVey Trucking, supra*, hold, contrary to the dicta in several of the cases cited in this string, that damages could be collectible against the Defendants here, because the applicability of the Eleventh Amendment is abrogated entirely.

*cal Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

The House and Senate Reports describing the meaning of § 525(a) state as follows:

> [T]his section is additional debtor protection. It codifies the result of *Perez v. Campbell* ... which held that a state would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a drivers license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy.

S.REP. NO. 989, 95th Cong., 2d Sess. 81 (1978), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5867; H.R. REP. NO. 595, 95th Cong., 1st Sess. 366–367 (1977), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5963, 6322–6323.

The Reports further thusly provide that Congress sought to broadly attack discriminatory practices by government entities beyond that involving suspension of drivers' licenses addressed in *Perez:*

> The Section is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the *Perez* rule. This section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a state bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union. *Id.*

The Senate Report further states that the courts "will continue to mark the contours of the anti-discrimination provision in pursuit of sound bankruptcy policy." *Id.*

The language of Section 525 and the foregoing Reports support the proposition that a state may not treat a debtor differently than a person who never filed bankruptcy. The cases demonstrate that courts have applied the concept of § 525(a) to include matters *incidental* to the discharge of debts in addition to matters directly related to debts discharged in bankruptcy. Cases subsequent to *Perez* have followed and expanded its doctrine, not only in the areas of denials of drivers' licenses, which was in issue in *Perez,* but also in cases concerning denials of transcripts to student-debtors, and denials to debtors of liquor licenses, contractor's bid obligations and rights to submit bids for government contracts, retention of public housing (an issue which we addressed in *Sudler* ), and other governmental actions, including debtors' participation in other governmental programs and denial of governmentally-guaranteed loans. *See generally, In re Rees,* 61 B.R. 114, 119–24 (Bankr.D.Utah 1986); and Annotation, *Protection of Debtor from Acts of Discrimination by Governmental Units Under § 525 of Bankruptcy Code of 1978,* 68 A.L.R.Fed. 137 (1984).

The Defendants' principal counter-argument to the contention that their policy in issue violates § 525(a) is, as indicated above, that their action is triggered not by the bankruptcy filing, but the fact that the impact of the automatic stay causes the Plaintiffs to no longer be able to meet the requirement of 35 P.S. § 1680.404c(a)(7). They cite but one case, *In re Rose,* 23 B.R. 662 (Bankr.D.Conn.1982), in support of their argument that § 525(a) is not violated as long as debtors are not denied benefits solely because of their *bankruptcy filing,* as opposed to even the direct consequences of the bankruptcy. Despite the Defendants' failure to cite same, we are also compelled to take note of the decisions in *In re Goldrich,* 771 F.2d 28 (2d Cir.1985); and *Duffey v. Dollison,* 734 F.2d 265 (6th Cir. 1984), which could be read as supporting the Defendants' position.[9]

*In re Begley,* 46 B.R. 707, 712–16 (E.D.Pa.1984), *later decision aff'd,* 760 F.2d 46 (3d Cir.1985); and *In re Richardson,* 27 B.R. 560 (E.D.Pa.1982). In *Johnson,* the Court of Appeals held that a

---

**9.** We are also compelled to note, in passing, three local cases in which claims under 11 U.S.C. § 525(a) were rejected, *Johnson v. Edinboro State College,* 728 F.2d 163 (3d Cir.1984);

In *Metro Transportation, supra,* 64 B.R. at 975–76, we indicated our general approach to § 525(a) allegations as follows:

We should note that, if it were necessary to decide this issue, we would be inclined to give a broad reading to 11 U.S.C. § 525(a). While we acknowledge the presence of language in § 525(a) reciting that only governmental action taken "solely because" of a bankruptcy filing is prohibited, we do not think that a debtor need prove that the government explicitly denied a benefit only because of a bankruptcy filing to prove a case under § 525(a). It would be quite impossible—or at least unlikely—that a governmental unit could be found to have acted adversely on the grounds of a debtor's bankruptcy filing rather than at least partially upon consideration of the financial circumstances of the debtor which led to the bankruptcy filing. It is also unlikely that a governmental body cognizant of § 525(a) will concede that it acted exclusively on the basis of a bankruptcy filing. Therefore, we believe that adverse governmental actions concerning which a bankruptcy filing appears to have played a significant role are proscribed by § 525(a).

We further believe that the burden of proof in a discrimination charge under 11 U.S.C. § 525(a) should be approached precisely as in a charge of discrimination in employment, housing, or public accommodations due to race, color, religion, sex, or national origin. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Hence, if an entity or person is found to be or has been a debtor and to have been denied a governmental benefit for which he was qualified, he should be found to have made out a prima facie case for relief under § 525(a), requiring the governmental unit taking the adverse action to articulate a legitimate, nondiscriminating reason for its adverse actions in order to prevail.

If this test articulated in the second paragraph of the above quotation is followed, the Defendants come up short. The Debtors clearly were denied HEMAP benefits for which they were qualified, making out a prima facie § 525(a) case, and the only argument with which the Defendants have countered basically admits that the bankruptcy filing was the actual reason for the Defendants' adverse action.

The fact that it is the particular element of the *automatic stay,* rather than the bankruptcy in itself, which resulted in the Defendants' action is, we believe, immaterial in the analysis. The automatic stay, as is emphasized in our holdings in *Clark, supra,* is part and parcel of a bankruptcy filing, as it arises "even in the face of a debtor's own dereliction in failing to raise the issue of the automatic stay as a defense...." 69 B.R. at 889. If carried to its logical conclusion, reasoning such as that employed by the Defendants would permit discrimination which is arguably based upon one aspect of a bankruptcy, and require the debtor to establish that only the filing of the bankruptcy itself triggered the discrimination. Making such a distinction would make as much sense as for a governmental unit to argue that it is not a bankruptcy *filing,* but the fact that schedules must be filed, or that a discharge may be entered, that is the basis for discrimination, as to argue that it is the *automatic stay,*

---

college could withhold transcripts despite a bankruptcy filing where the underlying student loan was nondischargeable. Thus, the Court here was merely holding that a debt which the Code indicated that a bankruptcy could not affect should not be impacted by § 525(a). That principle is not in issue here. In *Begley,* the court held that the government benefit purportedly in issue—acceptance by the Pennsylvania Public Utility Commission of jurisdiction over the utility's attempt to terminate the bankrupt debtor's service—lacked the requisite "directness" to come with that Code section. 46 B.R.

716. Here, however, it is clear that the benefits in issue are directly provided by the Defendants. In *Richardson,* the court merely reversed that portion of a bankruptcy court Order which declared a regulation which permitted denial of a student loan on the basis of a prior default unconstitutional as applied to a debtor, principally because the court found that the particular debtor's lack of diligence in requesting a hardship deferment of the loan constituted a ground for denial apart from the debtor's prior loan default. Here, clearly it was only the bankruptcy filing which triggered the Defendants' action.

but not the *filing*, which triggers the discrimination.

█ We believe that allowing such a distinction would turn our reasoning in *Metro* on its head, as we believe that the burden should be placed upon the alleged discriminator to prove that *no* aspect of the bankruptcy resulted in the denial of the benefit, rather than requiring the debtor to prove that the filing itself caused the discrimination to trigger § 525(a). The Defendants would be unable to meet this burden of proving that no aspect of the bankruptcy caused it to take action.

We also believe that there is a practical reason for this result, arising from one aspect of the "fresh start" policy, i.e., that debtors should not be discharged from bankruptcy filings because of fear of the consequences therefrom. If aware of the practices of the Defendants in issue here, there is no doubt that otherwise-qualified debtors, also qualified for HEMAP benefits, would be discouraged from filing for bankruptcy, or from applying for HEMAP benefits. Since a fresh start is the desired goal, debtors qualified for HEMAP should not be required to choose whether to file bankruptcy or seek HEMAP benefits. This case is analogous to the government-bid cases, as far as the planning aspect prior to filing is concerned. *See Son-Shone Grading, supra; In re Marine Electric Railway Products Div., Inc.*, 17 B.R. 845 (Bankr.E.D.N.Y.1982); and *In re Coleman American Moving Services, Inc.*, 8 B.R. 379 (Bankr.D.Kan.1980). A contractor who knows he will not be considered for government contracts if he files for bankruptcy is in the same position as a recipient of HEMAP benefits. Neither party would file for bankruptcy for fear of incurring the wrath of a government unit from which such party receives benefits.

The Defendants' policy is, in practical effect, like writing into the HEMAP statute the absolute requirement that no person can remain a program beneficiary while also a debtor in bankruptcy. It can scarcely be doubted that such an express provision would run afoul of the Supremacy Clause and § 525(a).

In our analysis of the *Duffey, Goldrich*, and *Rose* cases, we must observe that we disagree with their basis reasoning process, although we also believe that the facts of this case are significantly distinct from them such that the courts there would be likely to reach the same conclusion as we do on these facts. These cases all, in our view, remove the burden from the discriminator to show lack of discrimination, and require the debtor to undertake the almost impossible burden of proving that nothing else, aside from the bankruptcy filing, triggered the denial of benefits. By way of contrast, our reasoning in *Metro* would require the governmental agencies involved in the *Goldrich* and *Rose* cases to prove that the denial of benefits would have occurred irrespective of the filing of the bankruptcy or the incurrence of the dischargeable debt. Similarly, in *Duffey*, unless the state had been able to prove that it would not have allowed the debtor to recover his drivers' license even if he had not incurred the debt discharged in bankruptcy, its action should have been barred by § 525(a).

We note that our district court, agreeing with our critique, reached the opposite result from *Duffey* on the precise same facts in *Henry v. Heyison*, 4 B.R. 437 (E.D.Pa. 1980). The result in *Henry* has been followed not only in this Court, *see Smith v. Pennsylvania Department of Transportation*, 66 B.R. 244, 245 (E.D.Pa.1986); and *In re Patterson*, 10 B.R. 860, 861–62 (Bankr.E.D.Pa.1981), but elsewhere. *See, e.g., In re Taylor*, 27 B.R. 82 (Bankr.S.D. Fla.1983); *In re Layfield*, 12 B.R. 846 (Bankr.N.D.Ala.1981); and *In re Young*, 10 B.R. 17 (Bankr.C.D.Cal.1980); *But see In re Holder*, 40 B.R. 847 (Bankr.E.D.Wis. 1984). (follows *Duffey*).

The principal distinction between the facts of *Goldrich* and *Rose* and the instant case is the absence there of the admitted clear "cause and effect" relationship between the filing of the bankruptcy and the denial of benefits here. Thus, in *Goldrich*, the court refuses to hold that section 525 "promise[s] protection against *consideration* of the bankruptcy in *post-discharge*

credit arrangements." 771 F.2d at 30. (emphasis added). Here, far more than *consideration* of the bankruptcy terminated the benefits. The Defendants admit that, but for the bankruptcy filing, benefits would have continued.

In *Rose*, the debtor's bankruptcy occurred four years prior to any application for a benefit. Prior to bankruptcy and in the time between bankruptcy and the application, the debtor developed a credit history which included the debtor's inability to accumulate any cash, eight checking account overdrafts, and substantial accumulated debt. 23 B.R. at 667. These developments created additional factors which the state looked to in assessing the debtor's creditworthiness as well as the bankruptcy and the debt discharged by it. In contrast, the present case involves a benefit existing when bankruptcy was filed which was terminated immediately after the filing. In the present case, there were admittedly no factors other than the fact of a bankruptcy filing which led to the termination of benefits.

The cases which we believe are, in actuality, most factually analogous to the instant case are the public housing cases, the classic example of which is *In re Gibbs*, 9 B.R. 758, 763–64 (Bankr.D.Conn.1981), *reaff'd*, 12 B.R. 737 (Bankr.D.Conn.1981), *aff'd in part and rev'd in part*, 76 B.R. 257 (D.Conn., 1983).[10] The analogy arises from the fact that the HEMAP benefits here, like the subsidized rent accorded to public housing tenants in issue in *Gibbs*, are dispensations allowed to low-income persons to assist them in attaining or retaining the basic of human needs, i.e., shelter or housing. The reasoning of the *Gibbs* case has not been rejected by any known case and, as per *Sudler*, 71 B.R. at 786–87, was expressly approved not only by us, but in a previous brief, unpublished, but nevertheless decisive Order of Chief Judge Twardowski of this Court as well. *See In re*

*Amhurst*, No. 84–02604T (Bankr.E.D.Pa., Order filed March 8, 1985).

Clearly, in the public housing context, it could be argued, similarly to the arguments of the Defendants here, that housing authorities seeking to evict residents who file bankruptcy to discharge delinquent rents are being evicted due to their pre-petition financial mismanagement, which is likely to recur, not for the mere reason that they filed for bankruptcy; and that, in evicting tenants because they owed back rent, albeit pre-petition sums discharged in bankruptcy, housing authorities are not discriminating against debtor-tenants, but are merely treating them the same as other delinquent tenants. This is reasoning similar to that which the *Duffey* court found persuasive, and the Defendants sought to press here. Especially since the same vital commodity of housing is in issue in the public-housing cases as is in issue here, these arguments must be, and will be rejected here as they were in *Gibbs*, *Sudler*, and *Amhurst*.

■ We therefore have no hesitancy in concluding that the Defendants' practices in issue here are violative of 11 U.S.C. § 525(a), and hence must be declared violative of that section of the Code and enjoined hereafter.

### 4. THE DEFENDANTS' PRACTICES ALSO VIOLATE 11 U.S.C. § 362(a)(3).

■ In some of the § 525(a) cases, claims that actions of governmental agencies have discriminated against debtors in terminating benefits go hand-in-hand with claims by debtors that the governmental action also violates the automatic stay imposed by 11 U.S.C. § 362(a). This issue does not typically arise in cases like the drivers' license cases, the transcript cases, and did not arise in *Goldrich* or *Rose*, because, there, the governmental unit was not terminating a benefit, but was simply refusing to grant a future benefit.

---

**10.** The decision of the bankruptcy court was reversed only insofar as it denied certain state law claims, failed to clarify the terms of rein- statement of the debtor's lease, and failed to properly consider the issues of damages and attorney's fees under 42 U.S.C. §§ 1983, 1988.

In many cases where the issue has arisen, governmental units have argued that their actions are justified by 11 U.S.C. §§ 362(b)(4) or (b)(5), which exempt the application of the automatic stay as to governmental actions in furtherance of a governmental unit's police or regulatory powers. *See Elsimore, supra,* 66 B.R. at 715–21 (suspension of wholesalers' alcoholic beverage credit); *Metro, supra,* 64 B.R. at 972–73 (right of taxicab company to self-insure); *In re Geffkin,* 43 B.R. 697, 699–701 (Bankr.N.D.Ohio 1984) (suspension of right to self-insure workmen's compensation); *In re Rath Packing Co.,* 35 B.R. 615, 620–22 (Bankr.N.D.Iowa 1983) (same); and *Gibbs,* 9 B.R. at 761–63.

Here, however, there is no § 362(b)(4) or (b)(5) argument made by the Defendants, perhaps wisely because, except in *Metro,* this argument was rejected by each of the above courts. The Defendants thus apparently concede that they are not enforcing a police or regulatory power in administering the HEMAP. Stripped of this argument, the only argument made by the Defendants as to why the automatic stay did not bar their conduct seems to be that, since they are not collecting a debt in providing HEMAP benefits, they are outside of the scope of 11 U.S.C. § 362(a).

There is no question that the Defendants are not engaging in any debt-collection activity in administering HEMAP. However, as the Plaintiffs point out, 11 U.S.C. § 362(a)(3) bars *"any* act to obtain possession of property of the estate or of property from the estate ..."* (emphasis added), which would certainly seem to include a very broad scope of property interests. The term "property of the estate" has been given the broadest possible reading: "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983); *In re Mason,* 69 B.R. 876, 882–83 (Bankr.E.D.Pa.1987).

The Debtors analogize their interest in HEMAP benefits to the interest of debtors to receive energy assistance grants, which this Court has consistently held are indeed property of the respective Debtors' estates. *See In re McCauley, et al.,* C.A. Nos. 86–4414, 86–4416, 86–4417, and 86–4418, slip op. at 5–7 (E.D.Pa., Memorandum filed January 7, 1987); *Morris v. Philadelphia Electric Co.,* 45 B.R. 350, 351–53 (E.D.Pa. 1984); and *In re Maya,* 8 B.R. 202, 207 (Bankr.E.D.Pa.1981).

The Defendants' only rejoinders are weak ones. The first is an attempt to distinguish HEMAP benefits, which are loans, from the utility assistance benefits, which are grants. However, the broad definition of "property of the estate" would in no way support this distinction, assuming that it exists. Any property interest of the debtor, be it a right to a loan or a grant, would appear to fall within the definition of "property of the estate." Furthermore, the amount of benefits accorded by HEMAP, no matter what their form, are almost always in significantly higher amounts than emergency assistance grants.

The only case cited by the Defendants in support of their position on the § 362 issue is *In re LePeck Construction Co.,* 14 B.R. 195 (Bankr.E.D.N.Y.1981). That case involved a "proceeding to foreclose a mortgage primarily concerning two strangers to the bankruptcy proceeding," *id.* at 196, in which the mortgagee was obliged to join the debtor as a party because it had a mechanics' lien against the property being foreclosed. The bankruptcy court relied in part upon 28 U.S.C. § 959, which specifically authorizes actions against debtor-in-possession in "carrying on business" conneced with property of the estate, *see In re Borne Chemical Co., Inc.* 54 B.R. 126, 135 (Bankr.D.N.J.1984); and *In re Campbell,* 13 B.R. 974, 976 (Bankr.D.Idaho 1981), which is not applicable here. The court also reasoned that the foreclosure action had little, if any, practical impact on the debtor. Clearly, the HEMAP benefits in issue here are vital to the Plaintiffs to retain their shelter. While we cannot commit ourselves to the reasoning of the court in *LePeck* even under its facts, as we believe that the stay should have been deemed broad enough to embrace the ac-

tion in issue there, we note that the termination of the Plaintiffs' HEMAP benefits is clearly more significant to the Plaintiffs than the interests of the debtor in the foreclosure proceeding in issue in *LePeck*. Far from having little or no interest in the particular act which allegedly violated the stay, as in *LePeck*, the retention of HEMAP benefits—and the retention of irreplacable housing necessary for shelter which must have been jeopardized to allow them to originally apply for such benefits—is crucial to the Plaintiffs.

The instant case is therefore significantly distinguishable from the only authority cited by the Defendants. The Debtors have appropriately agrued that the termination of their HEMAP benefits falls with 11 U.S.C. § 362(a)(3). The Defendants' actions were hence in violation of the automatic stay as well as § 525(a).

5. THE DEFENDANTS HAVE DEPRIVED THE DEBTORS OF CIVIL RIGHTS, IN VIOLATION OF 42 U.S.C. § 1983.

██ The final issue addressed by the parties is whether, since the Defendants have been found to have violated 11 U.S.C. §§ 525(a) and 362(a)(3), they should concomitantly be found to have violated 42 U.S.C. § 1983, which provides as follows:

§ 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

We note that the position of the Plaintiffs, which is essentially that a violation of

a Bankruptcy Code provision by a governmental unit is perforce a violation of 42 U.S.C. § 1983, has been adopted in this Court by former Chief Judge Goldhaber, former Judge King, present Chief Judge Twardowski, and by one of two district judges who have considered the issue. We choose to follow this majority.

The most recent decision addressing this issue is the opinion of District Judge Katz in *Higgins v. Philadelphia Gas Works*, 54 B.R. 928, 933–34 (E.D.Pa.1985), where it is held that "Section 1983 provides a remedy for those rights guaranteed by the federal bankruptcy statutes. *In re Maya*, 8 B.R. 202 (Bankr.E.D.Pa.1982). *Accord, In re Gibbs*, 12 B.R. 737 (Bankr.D.Ct.1981)." *Id.* at 934.

This result was the same as that reached by Chief Judge Twardowski in a brief, unreported ruling in *In re Cooley, Cooley v. State of New Jersey, Dept. of Labor & Industry*, No. 82–01367T, Adv. No. 83–1303T (Bankr.E.D.Pa., Order filed Feb. 27, 1985). Previously, Judge Twardowski's predecessor as Chief Judge, Judge Goldhaber, in *Maya, supra*, considered a motion to dismiss a Civil Rights Action claim in an adversarial bankruptcy claim asserted by a debtor. In one of his many seminal decisions, Judge Goldhaber concluded that, on the basis of *Maine v. Thibautot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), a violation of a federal statute such as the Bankruptcy Code itself gave rise to an action pursuant to 42 U.S.C. § 1983. *Id.* at 204–05. The creditor's argument that the Civil Rights Act Count added nothing to the debtor's claim except the potential of recovery of attorneys' fees pursuant to 42 U.S.C. § 1988 was thusly rejected: "the fact that the only additional remedy which the debtors may receive under § 1983 is an award of attorneys' fees does not invalidate that claim." *Id.* at 206. In his decision in *In re Richardson*, 15 B.R. 925, 927 n. 4 (Bankr.E.D.Pa.1981), *modified on other grounds*, 27 B.R. 560 (E.D.Pa.1982), Judge King expressly adopted the reasoning of Judge Goldhaber in *Maya*.

Elsewhere, the same result was reached in *Arminio, supra*, 38 B.R. at 481; and in

*Gibbs, supra,* 12 B.R. 737, and, as can be noted from the unreported Ruling on Appeal, the district court in *Gibbs, supra,* 76 B.R. at 260–61, expressly affirmed this ruling. The bankruptcy court had held that "[i]n view of my holding that this court has jurisdiction to decide *Gibbs* § 1983 action, it follows that the court also has jurisdiction to award counsel fees under § 1988, ..." 12 B.R. at 742. Moreover, it appears that, there, the debtor made such light issue of his 1983 claim, congruent with his Bankruptcy Code claims, that the court originally concluded that this claim had been withdrawn. *Id.* at 738.

The reasoning of the foregoing cases, is, it is submitted, conclusive of the issue of the plaintiff's right to maintain this action under § 1983. We decline to follow the only contrary position, recited in *In re Begley,* 41 B.R. 402, 408 (E.D.Pa.1984) (per POLLAK, J.).

## F. CONCLUSION/THE PLAINTIFFS ARE ENTITLED TO ONLY DECLARATORY AND INJUNCTIVE RELIEF AND AN AWARD OF ATTORNEY'S FEES, NOT COMPENSATORY DAMAGES.

The Plaintiffs, in addition to requesting declaratory and injunctive relief, request "an opportunity to present their individual claims for compensatory and punitive damages" and "a reasonable attorney's fee and costs." We are willing to grant declaratory and injunctive relief for not only the named Plaintiffs, but also for the members of their class. However, at this point it is totally unclear as to what, if any, monetary damages have befallen the named Plaintiffs as a consequence of the Defendants' actions in the Complaint, and the only allegations in the Affidavits of Plaintiffs Watts and Bratton which would support such claims are allegations that their mortgagees *may* attempt to impose certain late charges against them for their delays in making payments. It may well be that the mortgagees will not attempt to impose such charges—or that the Debtors will successfully defend against them—or, if neither of the foregoing occurs, that the Defendants will voluntarily deduct any such charges from the Plaintiffs' loans.

However, given the very contingent nature of these damages, the apparent good faith of the Defendants in adopting the policy challenged, and at least the faint spectre of the applicability of the Eleventh Amendment in the event that damages are awarded, we are hopeful that no damages will result or that the Defendants will allow the Plaintiffs allowances to compensate for any that do result. Of course, we will not hesitate to award damages for any consequences of any refusal of the Defendants to comply with this Court's directives in the attached Order. However, we do not anticipate this development, as it appears to us that the Defendants acted at all times in good faith and we assume that they will do so hereafter. *Compare Johnson-Allen, supra,* 69 B.R. at 471.

However, we do believe that an award of reasonable attorney's fees to the Plaintiffs' Counsel is justified, both on the basis of 11 U.S.C. § 362(h); or on the basis on 42 U.S.C. § 1988, in light of our having sustained the Plaintiffs' claims under 42 U.S.C. § 1983.

An Order consistent with the foregoing Opinion shall issue.

## ORDER

AND NOW, this 30th day of June, 1987, upon consideration of the Briefs of the parties in reference to the Defendants' Motion to Disqualify Judge (hereinafter "the Recusal Motion"), the Plaintiffs' Motion for Determination of Class Action (hereinafter "the Class Motion"), and the Cross-Motions of the parties for Summary Judgment (hereinafter "the Summary Judgment Motions"), it is hereby ORDERED AND DECREED as follows:

1. The Recusal Motion is DENIED.

2. The Class Motion is GRANTED, and the Plaintiffs are hereby allowed to maintain this action, pursuant to F.R.Civ.P. 23(b)(2), on behalf of all individuals who have applied for or been awarded benefits under the Homeowners' Emergency Mortgage Assistance Program, 35 P.S. § 1680.-

401c et seq., (hereinafter referred to as "HEMAP"), in the past, or who will do so in the future.

3. The Defendants' Motion for Summary Judgment is DENIED, and the Plaintiffs' Motion for Summary Judgment is GRANTED in part.

4. It is declared that the Defendants' policy of terminating HEMAP benefits to the named Plaintiffs and the members of their class is violative of 11 U.S.C. § 525(a), 11 U.S.C. § 362(a)(3), and 42 U.S.C. § 1983.

5. The Defendants shall take all actions necessary to restore HEMAP benefits to the named Plaintiffs and the members of their class within twenty (20) days and shall continue to provide such benefits unless and until there is some reason unrelated to their bankruptcy cases for terminating same.

6. All requests of the Plaintiffs for monetary damages are DENIED, without prejudice to the Plaintiffs to seek such relief in the future if the Plaintiffs are able to prove that damages have resulted from the Defendants' conduct and the Defendants do not rectify same, or if the Defendants do not proceed in accordance with the accompanying Opinion.

7. The parties are directed to confer to resolve the issue of attorney's fees and costs due to the Plaintiffs' Counsel, but, if they are unable to do so, and the Plaintiffs have made a reasonable demand, the Plaintiffs' Counsel is accorded an opportunity to file a Motion requesting attorney's fees and costs, including compensation on the fee application, if such is necessary, per 11 U.S.C. § 362(h) and 42 U.S.C. § 1988, within thirty (30) days hereafter, said Motion to be procedurally in conformity with *In re Meade Land and Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975).